**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **BRIAN FURMAN, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br>**v.**<br><br>**AT HOME STORES LLC, f/k/a GARDEN RIDGE MANAGEMENT, LLC**<br><br>**Defendant.** | **Case No. 1:16-cv-08190**<br><br>**Magistrate Judge Mary Rowland** |

**INDEX OF EXHIBITS TO**
**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION TO CERTIFY A COLLECTIVE ACTION UNDER SECTION 216(b) OF THE FLSA SOLELY FOR SETTLEMENT PURPOSES; FOR APPROVAL OF AN OPT-IN SETTLEMENT; FOR APPOINTMENT OF SETTLEMENT ADMINISTRATOR; AND FOR APPROVAL OF AWARDS OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS**


Joint Stipulation of Settlement....................A

- Class List....................1
- Notice of Settlement of Collective Action....................2

Proposed Order Approving Settlement, Service Award, and Attorneys' Fees and Costs....................B

Declaration of Maureen A. Salas....................C

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **BRIAN FURMAN, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br>**v.**<br><br>**AT HOME STORES LLC, f/k/a GARDEN RIDGE MANAGEMENT, LLC**<br><br>**Defendant.** | **No. 16-cv-08190**<br><br>**Judge Charles R. Norgle Sr.**<br><br>**Magistrate Judge Mary M. Rowland** |

## JOINT STIPULATION OF SETTLEMENT

This Joint Stipulation of Settlement ("Joint Stipulation") was made and entered into by Named Plaintiff Brian Furman ("Named Plaintiff"), on behalf of himself and the Opt-in Plaintiffs (collectively, "Plaintiffs"), and Defendant At Home Stores LLC ("Defendant"), and is conditioned upon the Court's approval.

1. DEFINITIONS

The following terms, when used in this Joint Stipulation, have the meanings set forth below, except when they are otherwise or more precisely defined in another section.

(a) "Action" means the civil action filed in the Northern District of Illinois, *Furman v. At Home Stores LLC, f/k/a Garden Ridge Management, LLC,* Case Number 16-cv-08190.

(b) "Plaintiffs' Counsel" or "Class Counsel" means Werman Salas P.C.

(c) "Court" means the United States District Court for the Northern District of Illinois, Eastern Division.

(d) “Opt-In Plaintiffs” shall mean all Settlement Class Members who elect to participate in the Settlement by negotiating the settlement check issued to them pursuant to the terms of the Joint Stipulation.

(e) “Parties” means Plaintiffs and Defendant, collectively and, separately, each a “Party.”

(f) “Released Parties” means Defendant and its former and present parents, subsidiaries, and affiliated corporations and their respective officers, directors, shareholders, employees, and agents, and any other successors, assigns, or legal representatives.

(g) “Settlement” shall mean the resolution of the Action as effectuated by the Joint Stipulation.

(h) “Settlement Account” shall be a Qualified Settlement Fund established and controlled by the Settlement Administrator under Section 468B of the Internal Revenue Code and Treas. Reg. §1.468B-1, 26 C.F.R. § 1.468B-1, *et seq*. and which shall have a unique Employer Identification Number.

(i) “Settlement Class Members” means individuals who worked for Defendant as Customer Support Managers (CSMs) and/or Store Operations Managers (SOMs) between January 5, 2014 and January 14, 2017, and for whom Defendant produced payroll data during the Action.

(j) “Settlement Fund” shall refer to the common settlement fund that will be funded by Defendant in the amount of $990,000.00, and that will be distributed in accordance with this Joint Stipulation.

(k) “Net Settlement Fund” refers to the Settlement Fund less the amounts awarded by the Court for Plaintiffs’ Attorneys’ Fees and Plaintiffs’ Litigation Expense and for the Named

Plaintiff's and Opt-In Plaintiff Johnson's Service Awards, and the costs of settlement administration.

(l) "Settlement Payments" means the amounts to be paid to Settlement Class Members from the Net Settlement Fund as described in Section 3(e) of this Joint Stipulation.

(m) "Class Period" means the period between January 5, 2014 and January 14, 2017.

2. THIS JOINT STIPULATION IS CONTINGENT ON COURT APPROVAL

If, for any reason, the material terms of this Joint Stipulation are not approved by the Court, this Joint Stipulation will be void and shall have no force or effect. Whether or not the Joint Stipulation is approved, neither the Joint Stipulation nor any document, statement, proceeding, or conduct related to this Joint Stipulation, nor any reports or accounts thereof, shall in any event be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to any Party. Pending Court Approval, the litigation is stayed and the Parties shall not pursue any discovery or otherwise litigate the claims.

3. STATEMENT OF NO ADMISSION

(a) Although the Parties do not abandon the positions they took in the Action, they believe that continued litigation would be protracted, expensive, uncertain, and contrary to their best interests. In light of these realities, the Parties believe that this Joint Stipulation is fair, reasonable, and the best way to resolve the disputes between and among them.

(b) Defendant denies all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as the collective allegations asserted in the Action. Defendant further denies that this Action is appropriate for collective treatment for any purpose other than settlement. Defendant has agreed to resolve the Action via this Joint Stipulation, but to the extent this Joint Stipulation is deemed void, Defendant does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations

asserted by Named Plaintiff in the Action and/or any Opt-In Plaintiff should the case proceed, upon all procedural and substantive grounds, including without limitation the ability to challenge collective-action treatment on any grounds and to assert any and all other potential defenses or privileges (the "Rights").

(c) Named Plaintiff and Class Counsel agree that Defendant retains and reserves the Rights, and they agree not to take a position to the contrary. Specifically, Named Plaintiff and Class Counsel agree that, if the Action was to proceed, they will not argue or present any argument, and hereby waive any argument that, based on this settlement or this Joint Stipulation or any exhibit and attachment hereto, or any act performed or document executed pursuant to or in furtherance of this settlement or this Joint Stipulation, Defendant should be barred from contesting collective-action certification pursuant to FLSA on any grounds or from asserting any and all other potential defenses and privileges.

(d) This Joint Stipulation shall not be deemed an admission by, or a basis for estoppel against, Defendant that conditional certification pursuant to 29 U.S.C. § 216(b) in the Action or any other action is proper or cannot be contested on any grounds. Additionally, neither this Joint Stipulation, nor the settlement, nor any document, statement, or proceeding or conduct related to this Joint Stipulation, nor any reports or accounts thereof, shall in any event be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Released Parties, including any evidence of a presumption, concession, indication or admission by the Released Parties of any liability, fault, wrongdoing, omission, concession, or damage. Nor shall this Agreement be disclosed, referred to, offered or received in evidence against the Released Parties in any further proceeding in this Action, or in any other civil, criminal, or

administrative action or proceeding except for the purposes of settling this Action or enforcing the settlement of this Action.

4. MONETARY TERMS OF SETTLEMENT

(a) In order to settle the Action, and as consideration for the release of claims from Named Plaintiff and Opt-in Plaintiffs, dismissal of the Action, and the other good and valuable consideration described herein that the Named Plaintiff and Opt-In Plaintiffs are providing to Defendant, Defendant will deposit into the Settlement Account $990,000.00, which shall be used to provide for: (i) Settlement Payments to the Named Plaintiff and Opt-in Plaintiffs, as described in this Joint Stipulation; (ii) Service Awards to the Named Plaintiff and Opt-in Plaintiff Johnson, as described herein; (iii) Plaintiffs' Attorneys' Fees, as described herein; (iv) Plaintiffs' Litigation Expenses, as described herein; and (v) Settlement Administration Expenses, as described herein.

(b) The Settlement Fund shall be allocated as follows, subject to Court approval:

(i) The amount available from the Settlement Fund for the Named Plaintiff's and Opt-in Plaintiffs' *pro rata* Settlement Payments ("Net Settlement Fund") shall be the Settlement Fund minus the amounts paid to (i) the Named Plaintiff and Opt-in Plaintiff Johnson as Service Awards; (ii) Class Counsel for Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses; and (iii) the Settlement Administrator for the settlement administration fees and costs. The amounts to be deducted from the Gross Settlement Fund are set forth below in subparagraphs (ii), (iii), (iv), and (v).

(ii) In addition to his *pro rata* share of the Net Settlement Fund, and in exchange for the release set forth in ¶5(a), the Named Plaintiff shall receive an additional payment of $10,000.00 as a Service Award.

(iii) In addition to his *pro rata* share of the Net Settlement Fund, and in exchange for the release set forth in ¶5(b), Opt-in Plaintiff Johnson shall receive an additional payment of $5,000.00 as a Service Award.

(iv) A sum of no more than $330,000 shall be paid to Class Counsel for Plaintiffs' Attorneys' Fees, and an amount not to exceed $716.08 shall be paid to Class Counsel for reasonably incurred Litigation Expenses.

(v) A sum of $10,000 shall be paid to Rust Consulting for settlement administration fees and costs.

(c) Except as set forth in Section 3(g), below, Defendant's total obligation under this Joint Stipulation shall not exceed $990,000.00, inclusive of all payments described in this section and the employees' portion of any legal and tax withholdings, but excluding Defendant's payment of the employer's share of applicable state and federal payroll taxes associated with the Settlement Payments made to the Named Plaintiff, Opt-in Plaintiff Johnson, and each Opt-in Plaintiff.

(d) The Named Plaintiff, Opt-in Plaintiff Johnson, and each Settlement Class Member's Settlement Payment shall be calculated as follows:

(i) For each pay period, Plaintiffs will total the number of hours that each CSM and SOM worked according to the Historical Schedule Data produced by Defendant. Plaintiffs also will total the number of hours CSMs and SOMs were paid for working in a pay period according to the Detailed Payroll Data produced by Defendant by totaling the hours that had an earnings code of "Salary" or "Regular Pay."

(ii) For each pay period, Plaintiffs will divide the total number of hours each CSM and SOM worked according to the Historical Schedule Data by 10, and

divide the number of hours each CSM and SOM was paid for working according to the Detailed Payroll Data by 8. Plaintiffs will assume the lower of these two results reflects the number of days each CSM and SOM worked in the pay period.

(iii) After computing the number of days worked in the pay period, Plaintiffs will use the following assumptions to compute the number of days worked in each week of the two-week pay period:

(1) If the number of days worked in the pay period <=5, then all days will be assigned to Week 1.

(2) If the number of days worked in the pay period >5, then Week 1 equals 5 days worked and Week 2 equals the number of days worked in the pay period minus 5 days.

(iv) Next, Plaintiffs will multiply the number of days each CSM and SOM worked in each work week by 9 hours, which reflects 10 scheduled hours less a sixty (60) minute lunch break, to determine the Hours Worked in each work week.

(v) To calculate each CSMs and SOMs Regular Rate of Pay for each pay period, Plaintiffs summed the wages in the "Salary" and "Regular Pay" earnings codes for each pay period and divided by the Total Hours Worked in each pay period.

(vi) Each CSM's and SOM's Owed Overtime Wages were computed on a weekly basis by multiplying the number of hours he or she worked over 40 in the work week by one-half times his or her Regular Rate of Pay. (Owed Overtime Wages = Weekly OT Hours Worked *1/2 * Regular Rate of Pay).

(vii) The sum of each Settlement Class Member's Total Owed Overtime Wages shall be divided by the sum of all Settlement Class Members' Total Owed

Overtime Wages. The quotient, expressed as a percentage, shall represent each Settlement Class Member's Pro Rata Factor. Attachment 1 identifies each Settlement Class Member by Employee ID and his or her corresponding Pro Rata Factor.

(viii) Each Settlement Class Member's Settlement Payment shall be computed by multiplying his or her Pro Rata Factor by the Net Settlement Fund.

(e) The Settlement Administrator shall issue one check for each Settlement Payment allocated as follows:

(i) One-half of each Settlement Payment will represent wages. Regular employee payroll deductions shall be taken out of this portion of each Settlement Class Member's Settlement Payment as determined by the Settlement Administrator. The Settlement Administrator shall withhold federal tax on that amount for all Settlement Class Members based upon a flat withholding rate, which is reasonable and customary in accordance with Treas. Reg. 31.3402(g)-1(a)(2), and as is calculated by the Settlement Administrator. State tax will be withheld according to applicable state withholding requirements, which the Settlement Administrator shall be responsible for appropriately completing. The Settlement Administrator shall issue each Opt-In Plaintiff an IRS Form W-2 for this portion of the Settlement Payment.

(ii) One-half of each Settlement Payment will represent liquidated damages. Payroll deductions and income taxes shall not be taken from this portion of each Settlement Class Member's Settlement Payment or from the Service Awards distributed to the Named Plaintiff and Opt-In Plaintiff Johnson. The Settlement Administrator shall issue each Opt-in Plaintiff an IRS Form 1099 for the liquidated

damages portion of each Settlement Payment. Defendant shall also issue the Named Plaintiff and Opt-in Plaintiff Johnson an IRS Form 1099 for their Service Awards.

(iii) The back of each check to each Settlement Class Member will contain the following limited endorsement:

> By cashing this check, I agree to join the case *Furman v. At Homes Stores, LLC*, and I agree to participate in the Settlement and be bound by the release of claims in the Settlement Agreement.

(iv) For tracking purposes, the Settlement Administrator shall also include a unique control number on each check issued, and the Settlement Administrator shall maintain a central database that designates the control number associated with each Settlement Class member.

(f) Defendant shall be responsible for payment of the employer's portion of all applicable payroll taxes for each wage Settlement Payment made pursuant to Section 3(e)(i).

(g) If it is later determined that the schedule and payroll data previously produced by Defendant, in whole or in part, was incorrect or incomplete for certain Settlement Class Members, Defendant will supplement such payroll data within ten (10) days. If appropriate, Class Counsel will then recalculate the Settlement Payments due to those Settlement Class Members using the same methodology as is described in Section 4(d) of this Joint Stipulation, including proportioning any such award to reflect a comparable ratable share as though it had been distributed from the original Settlement Fund. The Parties will work together in good faith to resolve any differences over the amount of Settlement Payments owed to such Settlement Class Members, if any. In the event of any such difference, the parties will review the HRIS data, payroll data, and scheduling data to determine the nature of the discrepancy, if any. To the extent that the total deviation between the data originally produced and any discrepancy raised

during the Settlement process exceeds 5%, Defendant will pay corrected Settlement Payments or additional Settlement Payments from outside the Settlement Fund to the Settlement Administrator. The parties will mutually agree upon the proper allocation of these additional funds, if any, and in the event of any dispute between them agree to promptly raise the issue with the Court for determination. Defendant's obligations to make any such corrected settlement amount payments under this Section 4(g) shall cease one hundred and twenty (120) days from the date checks are initially issued by the Settlement Administrator to Settlement Class Members.

(h) None of the amounts paid to the Named Plaintiff or any Opt-In Plaintiff shall create any credit for, or be included in, or otherwise affect or alter the calculation or accrual of any employee benefit plans, programs, agreements or policies supplied, sponsored, maintained, contributed or otherwise provided by Defendant, including for purposes of any incentive plan.

5. <u>RELEASE OF CLAIMS</u>

(a) Named Plaintiff Brian Furman and the Released Parties fully release and discharge one another from any and all claims, known or unknown, arising from the beginning of time through the date of execution of this Joint Stipulation. By way of explanation, but not limiting its completeness, the Named Plaintiff and the Released Parties hereby fully, finally and unconditionally release one another from and for any and all claims, liabilities, suits, personal injuries, demands, debts, liens, damages, costs, grievances, injuries, actions or rights of action of any nature whatsoever, known or unknown, choate or inchoate, discrimination or otherwise, liquidated or unliquidated, absolute or contingent, in law or in equity, which were or could have been filed with any federal, state, local or private court, agency, arbitrator or any other entity, based directly or indirectly upon the Named Plaintiff's employment with Defendant and any alleged act or omission to act by the Released Parties, whether related or unrelated to his employment,

occurring and/or accruing prior to the execution of this Joint Stipulation. They further waive any right to any form of recovery, compensation or other remedy in any action brought by them or on their behalf. Without limiting the foregoing terms, the release and covenant not to sue in this paragraph specifically includes, without limitation, all claims they have or may have under the Fair Labor Standards Act, Illinois Minimum Wage Law, Illinois Wage Payment and Collection Act, Title VII of the Civil Rights Act of 1964, as amended, the National Labor Relations Act, as amended, 29 U.S.C. §§ 151, *et seq*., 42 U.S.C. § 1981, the Illinois Human Rights Act, as amended, the Americans With Disabilities Act, as amended, the Cook County Human Rights Ordinance and the Chicago Commission on Human Relations Enabling Ordinance. This release and covenant not-to-sue also includes any tort claims, and any and all claims that may have arisen from or under any federal, state or local constitution, statute, regulation, rule, ordinance, order, public policy, contract or common law.

(b) Opt-in Plaintiff Donald Johnson fully releases and discharges the Released Parties from any and all claims known or unknown arising from the beginning of time through March 29, 2017. By way of explanation, but not limiting its completeness, Opt-in Plaintiff Johnson hereby fully, finally and unconditionally releases any and all known or unknown claims, liabilities, suits, personal injuries, demands, debts, liens, damages, costs, grievances, injuries, actions or rights of action of any nature whatsoever, choate or inchoate, discrimination or otherwise, liquidated or unliquidated, absolute or contingent, in law or in equity, which were or could have been filed with any federal, state, local or private court, agency, arbitrator or any other entity, based directly or indirectly upon Opt-in Plaintiff Johnson's employment with Defendant and any alleged act or omission to act by the Released Parties, whether related or unrelated to his employment, occurring and/or accruing prior to March 29, 2017. Opt-in Plaintiff Johnson further waives any right to any

form of recovery, compensation or other remedy in any action brought by him or on his behalf. Without limiting the foregoing terms, the release and covenant not to sue in this paragraph specifically includes, without limitation, all claims he has or may have under Federal, State or Local law including but not limited to the Fair Labor Standards Act, the Indiana Civil Rights Law, the Indiana Wage Payment Statute, the Indiana Wage Claim Statute, the Indianapolis Human Rights Ordinance, Title VII of the Civil Rights Act of 1964, as amended, the National Labor Relations Act, as amended, 29 U.S.C. §§ 151, *et seq*., 42 U.S.C. § 1981, the Americans With Disabilities Act, as amended, and any claims under Georgia statutory or common law. This release and covenant not-to-sue also includes any tort claims arising or accruing prior to March 29, 2017, and any and all claims that may have arisen from or under any federal, state or local constitution, statute, regulation, rule, ordinance, order, public policy, contract or common law.

(c) Defendant hereby warrants that, based on the information of which it is currently aware, as of March 29, 2017, it is unaware of any legal claims or causes of action the Released Parties may have against Opt-In Plaintiff Johnson that may be brought in a court, administrative or other forum or proceeding. This provision does not apply to any subsequently discovered or occurring claims or facts. In addition, this provision does not affect the at-will nature of Opt-In Plaintiff Johnson's employment or otherwise affect or waive the Company's ability to enforce its policies, rules and procedures in a lawful manner. Defendant acknowledges and agrees that the terms and conditions in this Paragraph are material terms and conditions of this Agreement and constitute consideration to Opt-In Plaintiff Johnson that is necessary as an inducement for his provision of a General Release to the Released Parties.

(d) In exchange for their Settlement Payment, Opt-In Plaintiffs shall be deemed to have released and discharged the Released Parties from all claims or causes of action arising

during the Class Period for unpaid overtime wages that were asserted in the Action, or that arise out of facts asserted in the Action, including claims under the Fair Labor Standards Act, federal, state, and local law, or common law, as well as any related claims for liquidated damages, penalties, attorneys' fees and costs, expenses, and interest.

6. ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS

(a) Class Counsel shall make an application to the Court for Attorneys' Fees and Litigation Expenses. The amount of Attorneys' Fees sought will not exceed $330,000. The Litigation Expenses sought shall not exceed $716.08. Such application shall be filed with the Motion for Approval of the Joint Stipulation. Defendant will not oppose such application for fees or costs provided that Class Counsel do not seek to recover Attorneys' Fees in excess of $330,000 and do not seek to recover Litigation Expenses in excess of $716.08.

(b) Plaintiffs and Class Counsel understand and agree that Class Counsel's Attorneys' Fees and Litigation Expenses will be the full, final, and complete payment of all attorneys' fees and costs arising from and/or relating to the representation of the Named Plaintiff, Opt-in Plaintiff Johnson, Settlement Class Members or any other attorneys' fees and costs associated with the investigation and/or prosecution of the Litigation. As an inducement to Defendant to enter into this Joint Stipulation, and as a material condition thereof, Plaintiffs and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge any claim they may have against Defendant for attorneys' fees or costs arising from or relating to the individuals and matters identified in this Joint Stipulation. Furthermore, Plaintiffs and Class Counsel represent and warrant that no attorney, other than Class Counsel, has any attorney's fee lien on or claim to any proceeds arising out of, by virtue of, or in connection with the Action, and that the terms of this Joint Stipulation shall fully satisfy any and all claims by any attorney arising out of or by virtue of or in connection with the Action. Nothing in this Section shall preclude Plaintiffs from

appealing the allocation of Class Counsel's Fees and Expenses should the sum awarded by the Court fall below the amount described in Section 5(a) of this Joint Stipulation. If Class Counsel elect not to appeal or if the Court of Appeals affirms the decision, only the reduced amounts will be deemed to be Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses for purposes of this Joint Stipulation. Any remaining or reduced amounts shall be added to the Net Settlement Fund available for distribution to Settlement Class Members. If, following the exhaustion of any such appeal, the distribution of the Net Settlement Fund has already occurred, and the 120 day check cashing deadline has already expired, any remaining or reduced amounts shall be returned to Defendant.

(c) All of Defendant's own legal fees, costs and expenses incurred in this Action shall be borne by Defendant.

(d) Class Counsel may apply for a Service Award to Named Plaintiff Brian Furman in an amount not to exceed Ten Thousand Dollars ($10,000.00), in acknowledgment of his time spent providing documents and information for the prosecution of this litigation on behalf of Settlement Class Members, as well as conferring with Class Counsel, filing the Action, and attending the settlement conference. The Service Award shall be paid from the Settlement Account. Defendant agrees not to oppose such application, so long as it is consistent with the provisions of this Joint Stipulation.

(e) Class Counsel shall apply for a Service Award to Opt-in Plaintiff Donald Johnson in an amount not to exceed Five Thousand Dollars ($5,000.00), in acknowledgment of his time spent providing information to Class Counsel, opting-in to the Action, and otherwise assisting in the investigation and prosecution of this litigation on behalf of Settlement Class Members. The

Service Award shall be paid from the Settlement Account. Defendant agrees not to oppose such application, so long as it is consistent with the provisions of this Joint Stipulation.

7. SETTLEMENT TIMELINE

The Parties agree to follow the following timeline for the completion of the Settlement and dismissal of the Action, with the clarification that, if any appeal of the Approval Order is made by any person, no settlement payments or attorneys' fees payments shall be made until all appeals are decided and the case is returned to the district court, and there is a valid order in place that the settlement payments or attorneys' fees should now be made. If no such timely appeal is filed, the timelines are as follows:

(a) Settlement Approval: Plaintiffs shall file an Unopposed Motion for Approval of Settlement as soon as practicable.

(b) Production of Class Data: Within twenty-one (21) days of entry of the Order approving the Joint Stipulation, Defendant shall provide Class Counsel and the Settlement Administrator with the following information for all Settlement Class Members: (i) name, (ii) last known addresses, (iii) last known telephone number, (iv) employee ID number; and (v) social security number ("Class Data"). Class Counsel and the Settlement Administrator agree to keep this information confidential and use it only for the sole purpose of administering the settlement.

(c) Update of Settlement Class Members' Addresses: Upon receipt of the Class Data, the Settlement Administrator will verify the most recent mailing addresses for Settlement Class Members by using the National Change of Address (NCOA) Database, or a comparable database.

(d) Funding the Settlement Account: Within thirty (30) days of entry of the Order approving the Joint Stipulation, Defendant will deposit $990,000.00 into the Settlement Account.

(e) Payment of the Employer Share of Payroll Taxes: Within fifteen (15) days of entry of the Order approving the Joint Stipulation, the Settlement Administrator shall determine the employer's share of payroll employment taxes on Settlement Payments to Settlement Class Members, and shall communicate such amount to Defendant with a detailed explanation of the calculations. In the event of any dispute as to the calculation of the employer's share of payroll taxes, the Parties and Settlement Administrator shall meet and confer in good faith in an attempt to resolve the dispute. If the dispute cannot be resolved, it shall be submitted to the Court for a final determination. Within fifteen (15) days of the date the Settlement Administrator notifies Defendant of the amount of the employer's share of payroll taxes, or within fifteen (15) days after any dispute related to the amount is finally resolved, Defendant shall make any additional payment to the Settlement Account for payroll taxes as may be necessary. The Settlement Administrator shall thereafter remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities on a timely basis for all Settlement Class Members who timely negotiate their checks pursuant to its duties and undertakings. Defendant agrees to reasonably cooperate with the Settlement Administrator to the extent necessary to determine the amount of the payroll tax payment required under this Section. To the extent Defendant has remitted excess payroll taxes to the Settlement Account, the Settlement Administrator shall return those funds to Defendant within 14 days after the Check Cashing deadline has expired.

(f) Issuance of Settlement Payments and Service Awards: No later than fourteen (14) days after Defendant fully funds the Settlement Account in accordance with Section 7(e), supra, the Settlement Administrator shall make the following payments:

(i) The Settlement Administrator shall deliver Settlement Payments via First Class U.S. Mail to each Settlement Class Member for his or her ratable share of the Settlement

Fund as computed in Section 4(d) of this Joint Stipulation. The Settlement Payment checks shall be negotiable by Settlement Class Members for 120 days from the date they were mailed by the Settlement Administrator (the "Check Cashing Deadline"). The Settlement Administrator shall include a letter drafted by Class Counsel, attached as Attachment 2 to this Joint Stipulation, with each check to each Settlement Class Member explaining the terms of the settlement. The face of each check shall clearly state that the check must be presented for payment within 120 days.

(ii) The Settlement Administrator shall deliver the Named Plaintiff's Service Award and Opt-in Plaintiff Johnson's Service Award to Class Counsel.

(iii) If any Settlement Payment check is returned to the Settlement Administrator as undeliverable with a forwarding address, the Settlement Administrator will forward the Settlement Payment to the forwarding address. If any Settlement Payment is returned to the Settlement Administrator as undeliverable without a forwarding address, the Settlement Administrator will run a new search for the updated address through available databases, such as Accurint, and will forward the Settlement Payment to the new address obtained in this manner, if any. If, after this second mailing, the Settlement Payment is again returned as undeliverable, and if no other forwarding address is provided by the Settlement Class Member or otherwise located by the Check Cashing Deadline, the notice mailing process shall end for that Settlement Class Member.

(iv) The Settlement Administrator shall operate a telephone line as a resource for Settlement Class Members to update their contact information or to request more information regarding the Settlement. The Parties shall jointly approve any message(s) or information provided by that telephone line.

(v) Within fourteen (14) days of the expiration of the Check Cashing Deadline, the Settlement Administrator shall provide to Defendant and Class Counsel: (A) scanned copies of the negotiated Settlement Payment checks, and (B) a list, in Excel format, of the names of all Opt-in Plaintiffs including for each: (1) the amount of the Opt-in Plaintiff's Settlement Payment; (2) the amount of the Settlement Payment attributed to wages; and (3) the amount of the Settlement Payment attributed to liquidated damages.

(vi) If, after expiration of the Check Cashing Deadline, amounts remain in the Settlement Account, the Settlement Administrator shall return those funds to Defendant within 14 days after the expiration of the Check Cashing deadline.

(g) <u>Payment of Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses:</u> The Settlement Administrator shall deliver Class Counsel's award for Attorneys' Fees and Litigation Expenses, by wire transfer or check, to Werman Salas P.C. within 35 days of Court Approval of the Settlement.

(h) <u>Dismissal of the Action:</u> The Parties shall seek to have the Action dismissed with prejudice within thirty days after the Check Cashing Deadline.

8. <u>PRESS STATEMENTS</u>

Neither Party shall issue a press release regarding this Joint Stipulation or the Settlement of the Action. If the Parties are contacted by the press with regard to this Action or the Settlement, they will indicate only that the Parties reached a mutually satisfactory resolution of the Action.

9. <u>MUTUAL FULL COOPERATION</u>

The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Joint Stipulation, and exercise good-faith efforts to accomplish the terms and conditions of this Joint Stipulation.

10. CONSTRUCTION

The terms and conditions of this Joint Stipulation are the result of lengthy, intensive, arm's-length negotiations between the Parties. Accordingly, this Joint Stipulation is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Joint Stipulation.

11. INTEGRATION

This Joint Stipulation contains the entire agreement between the Parties relating to the Settlement, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein. There are no undisclosed side agreements between the Parties or their counsel. No rights hereunder may be waived except in writing.

12. BINDING ON SUCCESSORS AND ASSIGNS

This Joint Stipulation shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

13. MODIFICATION

This Joint Stipulation may not be changed, altered, or modified, except in writing and signed by the Parties and approved by the Court. This Joint Stipulation may not be discharged except by performance with its terms or by a writing signed by the Parties and approved by the Court.

14. APPLICABLE LAW

The terms of this Joint Stipulation shall be governed by and construed in accordance with Illinois law.

15. THIS SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE

The Parties warrant and represent they have conducted a thorough investigation of the

facts and allegations in the Action and have diligently pursued an investigation of the claims alleged in the Action. The Parties further represent and warrant that they believe this Settlement is a fair and reasonable resolution of this Action and that they have arrived at this Settlement in arms-length negotiations, taking into account all relevant factors, present and potential. This Settlement was reached after extensive negotiations, facilitated by Magistrate Judge Rowland.

16. RETENTION OF JURISDICTION

The Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Joint Stipulation and all orders and judgments entered in connection therewith, and the Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the Settlement embodied in this Joint Stipulation and all orders and judgments entered in connection therewith.

17. COUNTERPARTS

This Joint Stipulation may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Joint Stipulation, which shall be binding upon and effective as to all Parties. Electronic signatures compliant with the ESIGN Act and signatures transmitted by fax or .pdf shall have the same effect as an original ink signature.

18. PARTIES' AUTHORITY

The signatories hereto represent that they are fully authorized to enter into this Joint Stipulation and bind the respective Parties to its terms and conditions.

By: ______________________________ Dated: ___________________________
Plaintiff, Brian Furman

By: ___________________________ Dated: ___________________________
Opt-In Plaintiff Donald Johnson

By: ________________________ Dated: ___________________________
One of Plaintiffs' Attorneys

Douglas M. Werman
Maureen A. Salas
Sarah J. Arendt
Zachary C. Flowerree
Werman Salas P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008

By: ___________________________ Dated: ___________________________
At Home Stores LLC

Its: ___________________________

By: ___________________________ Dated: ___________________________
One of Defendant's Attorneys

Michael D. Ray
Colleen G. DeRosa
Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
155 N. Wacker Dr., Suite 4300
Chicago, IL 60606
Telephone: (312) 558-1220

29550207.1

# ATTACHMENT 1

**Furman v. At Home Stores**
**Attachment 1**

| | Employee Number | Job Position | Pro Rata Factor |
|---|---|---|---|
| 1 | 013567 | CSM/SOM | 0.58% |
| 2 | 018825 | CSM | 0.17% |
| 3 | 018880 | SOM | 0.13% |
| 4 | 018995 | SOM | 0.40% |
| 5 | 020195 | CSM | 0.44% |
| 6 | 020908 | CSM | 0.21% |
| 7 | 021492 | CSM | 0.46% |
| 8 | 021704 | SOM | 0.60% |
| 9 | 021716 | SOM | 0.51% |
| 10 | 021803 | SOM | 0.47% |
| 11 | 021928 | CSM | 0.23% |
| 12 | 022214 | CSM | 0.23% |
| 13 | 300685 | SOM | 0.02% |
| 14 | 301410 | SOM | 0.09% |
| 15 | 301643 | SOM | 0.27% |
| 16 | 302636 | SOM | 0.50% |
| 17 | 302860 | SOM | 0.45% |
| 18 | 304057 | SOM | 0.18% |
| 19 | 312544 | SOM | 0.48% |
| 20 | 313366 | SOM | 0.45% |
| 21 | 317853 | CSM/SOM | 0.39% |
| 22 | 318094 | SOM | 0.18% |
| 23 | 320610 | CSM | 0.09% |
| 24 | 529043 | CSM | 0.34% |
| 25 | 529864 | SOM | 0.21% |
| 26 | 531837 | CSM | 0.34% |
| 27 | 603617 | SOM | 0.33% |
| 28 | 651045 | CSM | 0.45% |
| 29 | 651404 | CSM | 0.54% |
| 30 | 651565 | CSM | 0.23% |
| 31 | 652154 | SOM | 0.62% |
| 32 | 652773 | SOM | 0.07% |
| 33 | 653307 | CSM | 0.20% |
| 34 | 653444 | CSM | 0.04% |
| 35 | 653576 | SOM | 0.42% |
| 36 | 653923 | SOM | 0.49% |
| 37 | 654069 | CSM | 0.48% |
| 38 | 654095 | CSM | 0.40% |
| 39 | 654100 | SOM | 0.50% |
| 40 | 654908 | CSM | 0.10% |
| 41 | 655236 | SOM | 0.44% |
| 42 | 655933 | CSM | 0.46% |
| 43 | 656053 | SOM | 0.10% |

**Furman v. At Home Stores**
**Attachment 1**

| | Employee Number | Job Position | Pro Rata Factor |
|---|---|---|---|
| 44 | 656906 | CSM | 0.08% |
| 45 | 656968 | CSM/SOM | 0.45% |
| 46 | 657151 | SOM | 0.48% |
| 47 | 657245 | SOM | 0.39% |
| 48 | 657403 | CSM | 0.50% |
| 49 | 657738 | SOM | 0.59% |
| 50 | 658090 | SOM | 0.36% |
| 51 | 658235 | CSM | 0.29% |
| 52 | 658427 | SOM | 0.86% |
| 53 | 658450 | CSM | 0.38% |
| 54 | 658460 | SOM | 0.43% |
| 55 | 658494 | SOM | 0.54% |
| 56 | 658802 | CSM | 0.43% |
| 57 | 658903 | CSM | 0.47% |
| 58 | 658915 | CSM | 0.40% |
| 59 | 659073 | SOM | 0.08% |
| 60 | 659141 | CSM | 0.35% |
| 61 | 659762 | SOM | 0.10% |
| 62 | 659779 | CSM | 0.01% |
| 63 | 659991 | SOM | 0.46% |
| 64 | 660027 | CSM | 0.21% |
| 65 | 660085 | SOM | 0.32% |
| 66 | 660092 | SOM | 0.22% |
| 67 | 660214 | SOM | 0.33% |
| 68 | 660312 | SOM | 0.64% |
| 69 | 660334 | SOM | 0.16% |
| 70 | 660345 | SOM | 0.35% |
| 71 | 660360 | SOM | 0.11% |
| 72 | 660410 | SOM | 0.44% |
| 73 | 660611 | CSM | 0.04% |
| 74 | 660655 | CSM | 0.13% |
| 75 | 660660 | SOM | 0.23% |
| 76 | 660663 | CSM | 0.03% |
| 77 | 660731 | SOM | 0.47% |
| 78 | 660955 | SOM | 0.47% |
| 79 | 661219 | SOM | 0.22% |
| 80 | 661237 | CSM | 0.33% |
| 81 | 661615 | CSM | 0.09% |
| 82 | 661684 | CSM | 0.47% |
| 83 | 661862 | CSM | 0.27% |
| 84 | 661884 | SOM | 0.48% |
| 85 | 661925 | CSM | 0.20% |
| 86 | 661962 | CSM | 0.36% |

**Furman v. At Home Stores**
**Attachment 1**

| | Employee Number | Job Position | Pro Rata Factor |
|---|---|---|---|
| 87 | 661991 | CSM | 0.43% |
| 88 | 662003 | CSM/SOM | 0.50% |
| 89 | 662007 | SOM | 0.25% |
| 90 | 662019 | SOM | 0.45% |
| 91 | 662058 | SOM | 0.09% |
| 92 | 662105 | SOM | 0.53% |
| 93 | 662159 | CSM | 0.11% |
| 94 | 662210 | CSM | 0.58% |
| 95 | 662246 | SOM | 0.28% |
| 96 | 662339 | SOM | 0.54% |
| 97 | 662362 | SOM | 0.14% |
| 98 | 662423 | CSM/SOM | 0.26% |
| 99 | 662465 | CSM | 0.23% |
| 100 | 662466 | SOM | 0.30% |
| 101 | 662578 | SOM | 0.35% |
| 102 | 662606 | SOM | 0.27% |
| 103 | 662724 | SOM | 0.41% |
| 104 | 662786 | SOM | 0.06% |
| 105 | 662801 | SOM | 0.17% |
| 106 | 662815 | SOM | 0.43% |
| 107 | 662848 | CSM | 0.10% |
| 108 | 662930 | SOM | 0.46% |
| 109 | 662958 | CSM | 0.44% |
| 110 | 663267 | CSM | 0.11% |
| 111 | 663301 | SOM | 0.15% |
| 112 | 663327 | SOM | 0.05% |
| 113 | 663348 | CSM | 0.51% |
| 114 | 663368 | CSM | 0.46% |
| 115 | 663682 | CSM/SOM | 0.25% |
| 116 | 663828 | SOM | 0.06% |
| 117 | 663898 | CSM | 0.30% |
| 118 | 663947 | SOM | 0.52% |
| 119 | 664012 | SOM | 0.01% |
| 120 | 664021 | CSM | 0.30% |
| 121 | 664037 | SOM | 0.10% |
| 122 | 664050 | CSM/SOM | 0.38% |
| 123 | 664130 | SOM | 0.28% |
| 124 | 664132 | CSM | 0.33% |
| 125 | 664188 | CSM | 0.10% |
| 126 | 664227 | CSM | 0.49% |
| 127 | 664256 | CSM/SOM | 0.50% |
| 128 | 664335 | SOM | 0.25% |
| 129 | 664346 | SOM | 0.05% |

**Furman v. At Home Stores**
**Attachment 1**

| | Employee Number | Job Position | Pro Rata Factor |
|---|---|---|---|
| 130 | 664376 | CSM/SOM | 0.23% |
| 131 | 664472 | CSM | 0.16% |
| 132 | 664514 | CSM | 0.21% |
| 133 | 664572 | CSM | 0.48% |
| 134 | 664607 | CSM | 0.01% |
| 135 | 664643 | CSM | 0.37% |
| 136 | 664646 | SOM | 0.26% |
| 137 | 664759 | CSM | 0.04% |
| 138 | 664918 | SOM | 0.09% |
| 139 | 664957 | CSM | 0.55% |
| 140 | 665011 | SOM | 0.34% |
| 141 | 665016 | CSM | 0.23% |
| 142 | 665019 | SOM | 0.19% |
| 143 | 665062 | SOM | 0.33% |
| 144 | 665074 | SOM | 0.22% |
| 145 | 665097 | SOM | 0.07% |
| 146 | 665104 | CSM/SOM | 0.45% |
| 147 | 665115 | CSM | 0.42% |
| 148 | 665141 | CSM | 0.07% |
| 149 | 665227 | SOM | 0.37% |
| 150 | 665250 | CSM | 0.52% |
| 151 | 665273 | CSM | 0.35% |
| 152 | 665480 | SOM | 0.02% |
| 153 | 665576 | CSM | 0.05% |
| 154 | 665661 | SOM | 0.19% |
| 155 | 665677 | CSM | 0.52% |
| 156 | 666283 | CSM | 0.01% |
| 157 | 666294 | CSM/SOM | 0.41% |
| 158 | 666339 | SOM | 0.14% |
| 159 | 666346 | CSM | 0.10% |
| 160 | 666382 | SOM | 0.11% |
| 161 | 666387 | SOM | 0.28% |
| 162 | 666394 | SOM | 0.05% |
| 163 | 666400 | CSM | 0.23% |
| 164 | 666406 | CSM | 0.06% |
| 165 | 666409 | SOM | 0.02% |
| 166 | 666446 | CSM | 0.47% |
| 167 | 666454 | SOM | 0.28% |
| 168 | 666488 | CSM/SOM | 0.45% |
| 169 | 666548 | SOM | 0.25% |
| 170 | 666599 | SOM | 0.12% |
| 171 | 666626 | CSM | 0.18% |
| 172 | 666658 | CSM/SOM | 0.47% |

**Furman v. At Home Stores**
**Attachment 1**

| | Employee Number | Job Position | Pro Rata Factor |
|---|---|---|---|
| 173 | 666706 | SOM | 0.03% |
| 174 | 666709 | CSM/SOM | 0.34% |
| 175 | 666714 | SOM | 0.17% |
| 176 | 666717 | CSM | 0.14% |
| 177 | 666764 | SOM | 0.09% |
| 178 | 666768 | CSM | 0.09% |
| 179 | 666789 | SOM | 0.17% |
| 180 | 666836 | SOM | 0.13% |
| 181 | 666937 | CSM | 0.22% |
| 182 | 667019 | CSM | 0.07% |
| 183 | 667045 | CSM | 0.14% |
| 184 | 667072 | CSM | 0.13% |
| 185 | 667074 | SOM | 0.08% |
| 186 | 667104 | CSM | 0.25% |
| 187 | 667117 | SOM | 0.08% |
| 188 | 667157 | SOM | 0.10% |
| 189 | 667179 | SOM | 0.44% |
| 190 | 667244 | CSM | 0.29% |
| 191 | 667288 | CSM | 0.62% |
| 192 | 667292 | SOM | 0.66% |
| 193 | 667303 | CSM | 0.28% |
| 194 | 667310 | CSM | 0.11% |
| 195 | 667315 | SOM | 0.24% |
| 196 | 667337 | CSM | 0.58% |
| 197 | 667350 | CSM | 0.15% |
| 198 | 667394 | CSM | 0.26% |
| 199 | 667401 | CSM | 0.20% |
| 200 | 667414 | SOM | 0.27% |
| 201 | 667436 | SOM | 0.54% |
| 202 | 667507 | SOM | 0.26% |
| 203 | 667511 | CSM | 0.38% |
| 204 | 667684 | SOM | 0.31% |
| 205 | 667754 | CSM | 0.28% |
| 206 | 667755 | SOM | 0.46% |
| 207 | 667900 | CSM | 0.46% |
| 208 | 667942 | CSM | 0.04% |
| 209 | 667945 | CSM | 0.44% |
| 210 | 668004 | CSM | 0.10% |
| 211 | 668038 | SOM | 0.18% |
| 212 | 668039 | SOM | 0.22% |
| 213 | 668041 | CSM | 0.29% |
| 214 | 668073 | CSM | 0.48% |
| 215 | 668115 | CSM | 0.33% |

**Furman v. At Home Stores**
**Attachment 1**

| | Employee Number | Job Position | Pro Rata Factor |
|---|---|---|---|
| 216 | 668161 | CSM | 0.27% |
| 217 | 668167 | CSM | 0.23% |
| 218 | 668175 | CSM | 0.15% |
| 219 | 668212 | CSM/SOM | 0.72% |
| 220 | 668217 | SOM | 0.17% |
| 221 | 668257 | CSM | 0.28% |
| 222 | 668259 | SOM | 0.20% |
| 223 | 668267 | SOM | 0.19% |
| 224 | 668278 | SOM | 0.07% |
| 225 | 668288 | CSM | 0.21% |
| 226 | 668304 | CSM/SOM | 0.35% |
| 227 | 668307 | CSM | 0.22% |
| 228 | 668334 | SOM | 0.27% |
| 229 | 668401 | SOM | 0.23% |
| 230 | 668415 | CSM | 0.50% |
| 231 | 668424 | CSM | 0.07% |
| 232 | 668474 | CSM | 0.23% |
| 233 | 668476 | CSM/SOM | 0.29% |
| 234 | 668491 | CSM | 0.15% |
| 235 | 668492 | SOM | 0.57% |
| 236 | 668513 | CSM | 0.21% |
| 237 | 668526 | SOM | 0.50% |
| 238 | 668557 | CSM | 0.04% |
| 239 | 668576 | CSM | 0.17% |
| 240 | 668651 | SOM | 0.17% |
| 241 | 668652 | SOM | 0.01% |
| 242 | 668671 | CSM | 0.19% |
| 243 | 668720 | SOM | 0.16% |
| 244 | 668766 | SOM | 0.20% |
| 245 | 668767 | CSM | 0.17% |
| 246 | 668768 | CSM/SOM | 0.28% |
| 247 | 668778 | SOM | 0.13% |
| 248 | 668877 | CSM | 0.28% |
| 249 | 668937 | SOM | 0.13% |
| 250 | 668938 | CSM | 0.17% |
| 251 | 668969 | SOM | 0.02% |
| 252 | 668977 | CSM | 0.13% |
| 253 | 669048 | CSM | 0.07% |
| 254 | 669084 | CSM | 0.06% |
| 255 | 669090 | CSM | 0.07% |
| 256 | 669108 | SOM | 0.10% |
| 257 | 669109 | CSM | 0.08% |
| 258 | 669112 | SOM | 0.10% |

**Furman v. At Home Stores**
**Attachment 1**

| | Employee Number | Job Position | Pro Rata Factor |
|---|---|---|---|
| 259 | 669133 | SOM | 0.05% |
| 260 | 669202 | SOM | 0.00% |
| 261 | 669282 | CSM | 0.16% |
| 262 | 669395 | CSM | 0.26% |
| 263 | 669412 | CSM | 0.05% |
| 264 | 669518 | SOM | 0.30% |
| 265 | 669564 | CSM | 0.25% |
| 266 | 669607 | SOM | 0.18% |
| 267 | 669668 | SOM | 0.14% |
| 268 | 669731 | SOM | 0.28% |
| 269 | 669748 | CSM | 0.22% |
| 270 | 669769 | SOM | 0.23% |
| 271 | 669799 | CSM | 0.26% |
| 272 | 669809 | SOM | 0.27% |
| 273 | 669864 | CSM | 0.24% |
| 274 | 669882 | SOM | 0.21% |
| 275 | 670018 | CSM | 0.01% |
| 276 | 670053 | CSM | 0.09% |
| 277 | 670121 | CSM | 0.06% |
| 278 | 670146 | CSM | 0.04% |
| 279 | 670160 | SOM | 0.10% |
| 280 | 670197 | SOM | 0.29% |
| 281 | 670244 | SOM | 0.17% |
| 282 | 670252 | CSM | 0.02% |
| 283 | 670345 | CSM/SOM | 0.20% |
| 284 | 670354 | CSM | 0.17% |
| 285 | 670391 | CSM | 0.19% |
| 286 | 670435 | CSM | 0.11% |
| 287 | 670451 | CSM | 0.16% |
| 288 | 670463 | CSM | 0.13% |
| 289 | 670473 | CSM | 0.22% |
| 290 | 670500 | SOM | 0.15% |
| 291 | 670510 | CSM | 0.15% |
| 292 | 670511 | SOM | 0.18% |
| 293 | 670517 | SOM | 0.12% |
| 294 | 670671 | CSM | 0.16% |
| 295 | 670713 | CSM | 0.11% |
| 296 | 670723 | SOM | 0.01% |
| 297 | 670756 | CSM | 0.01% |
| 298 | 670779 | SOM | 0.15% |
| 299 | 670826 | CSM | 0.06% |
| 300 | 670877 | SOM | 0.18% |
| 301 | 670937 | CSM | 0.06% |

**Furman v. At Home Stores**
**Attachment 1**

| | Employee Number | Job Position | Pro Rata Factor |
|---|---|---|---|
| 302 | 670948 | CSM | 0.05% |
| 303 | 670983 | SOM | 0.11% |
| 304 | 671030 | CSM | 0.16% |
| 305 | 671089 | SOM | 0.19% |
| 306 | 671153 | CSM | 0.16% |
| 307 | 671175 | SOM | 0.15% |
| 308 | 671201 | SOM | 0.13% |
| 309 | 671225 | CSM | 0.15% |
| 310 | 671267 | CSM | 0.03% |
| 311 | 671269 | CSM | 0.12% |
| 312 | 671275 | SOM | 0.13% |
| 313 | 671308 | SOM | 0.14% |
| 314 | 671311 | CSM | 0.14% |
| 315 | 671339 | CSM/SOM | 0.15% |
| 316 | 671366 | SOM | 0.07% |
| 317 | 671449 | CSM | 0.05% |
| 318 | 671488 | CSM | 0.14% |
| 319 | 671489 | CSM | 0.04% |
| 320 | 671505 | CSM/SOM | 0.15% |
| 321 | 671506 | CSM | 0.01% |
| 322 | 671508 | SOM | 0.09% |
| 323 | 671528 | SOM | 0.13% |
| 324 | 671603 | CSM | 0.17% |
| 325 | 671650 | CSM/SOM | 0.07% |
| 326 | 671714 | SOM | 0.10% |
| 327 | 671769 | CSM | 0.11% |
| 328 | 671826 | CSM | 0.11% |
| 329 | 671872 | SOM | 0.13% |
| 330 | 671921 | SOM | 0.01% |
| 331 | 671935 | CSM | 0.10% |
| 332 | 671939 | CSM | 0.10% |
| 333 | 671960 | CSM | 0.11% |
| 334 | 671993 | SOM | 0.09% |
| 335 | 671994 | SOM | 0.15% |
| 336 | 672038 | SOM | 0.08% |
| 337 | 672075 | CSM | 0.09% |
| 338 | 672094 | CSM | 0.05% |
| 339 | 672155 | SOM | 0.05% |
| 340 | 672169 | SOM | 0.08% |
| 341 | 672317 | CSM | 0.08% |
| 342 | 672340 | CSM | 0.07% |
| 343 | 672351 | SOM | 0.05% |
| 344 | 672474 | SOM | 0.03% |

**Furman v. At Home Stores**
**Attachment 1**

| | Employee Number | Job Position | Pro Rata Factor |
|---|---|---|---|
| 345 | 672600 | CSM | 0.17% |
| 346 | 672718 | CSM | 0.48% |
| 347 | 672766 | CSM | 0.51% |
| 348 | 672814 | SOM | 0.37% |
| 349 | 672819 | SOM | 0.37% |
| 350 | 672826 | CSM | 0.04% |
| 351 | 672943 | SOM | 0.08% |
| 352 | 672947 | CSM | 0.10% |
| 353 | 672972 | SOM | 0.04% |
| 354 | 673030 | SOM | 0.08% |
| 355 | 673134 | CSM | 0.07% |
| 356 | 673226 | CSM/SOM | 0.21% |
| 357 | 673327 | SOM | 0.16% |
| 358 | 673474 | CSM | 0.04% |
| 359 | 673643 | SOM | 0.14% |
| 360 | 673716 | CSM | 0.13% |
| 361 | 673731 | CSM | 0.29% |
| 362 | 673762 | SOM | 0.01% |
| 363 | 673802 | CSM | 0.19% |
| 364 | 673804 | SOM | 0.35% |
| 365 | 673845 | CSM | 0.29% |
| 366 | 673858 | CSM | 0.06% |
| 367 | 673867 | CSM | 0.09% |
| 368 | 674019 | SOM | 0.46% |
| 369 | 674021 | CSM | 0.29% |
| 370 | 674044 | SOM | 0.50% |
| 371 | 674067 | CSM | 0.47% |
| 372 | 674071 | SOM | 0.05% |
| 373 | 674117 | SOM | 0.15% |
| 374 | 674147 | CSM | 0.06% |
| 375 | 674150 | SOM | 0.29% |
| 376 | 674151 | CSM | 0.07% |
| 377 | 674164 | SOM | 0.08% |
| 378 | 674170 | SOM | 0.41% |
| 379 | 674172 | SOM | 0.08% |
| 380 | 674202 | CSM | 0.14% |
| 381 | 674262 | SOM | 0.15% |
| 382 | 674275 | SOM | 0.44% |
| 383 | 674351 | SOM | 0.20% |
| 384 | 674374 | CSM | 0.06% |
| 385 | 674393 | CSM/SOM | 0.51% |
| 386 | 674394 | CSM | 0.34% |
| 387 | 674413 | CSM | 0.36% |

**Furman v. At Home Stores**
**Attachment 1**

| | Employee Number | Job Position | Pro Rata Factor |
|---|---|---|---|
| 388 | 674427 | SOM | 0.01% |
| 389 | 674482 | SOM | 0.15% |
| 390 | 674497 | SOM | 0.39% |
| 391 | 674547 | CSM/SOM | 0.26% |
| 392 | 674610 | CSM | 0.10% |
| 393 | 674642 | SOM | 0.05% |
| 394 | 674707 | SOM | 0.02% |
| 395 | 674730 | SOM | 0.36% |
| 396 | 674794 | SOM | 0.39% |
| 397 | 674830 | SOM | 0.11% |
| 398 | 674847 | CSM | 0.18% |
| 399 | 674868 | CSM | 0.34% |
| 400 | 674905 | CSM | 0.30% |
| 401 | 675019 | SOM | 0.28% |
| 402 | 675067 | CSM | 0.30% |
| 403 | 675082 | SOM | 0.02% |
| 404 | 675181 | CSM | 0.08% |
| 405 | 675183 | SOM | 0.10% |
| 406 | 675184 | CSM | 0.08% |
| 407 | 675187 | CSM | 0.00% |
| 408 | 675222 | CSM | 0.11% |
| 409 | 675246 | SOM | 0.13% |
| 410 | 675258 | CSM/SOM | 0.19% |
| 411 | 675264 | SOM | 0.05% |
| 412 | 675310 | CSM/SOM | 0.55% |
| 413 | 675329 | CSM | 0.30% |
| 414 | 675417 | CSM | 0.01% |
| 415 | 675418 | CSM | 0.22% |
| 416 | 675423 | CSM | 0.16% |
| 417 | 675468 | SOM | 0.12% |
| 418 | 675486 | CSM | 0.19% |
| 419 | 675553 | SOM | 0.22% |
| 420 | 675602 | CSM | 0.23% |
| 421 | 675633 | CSM | 0.11% |
| 422 | 675665 | SOM | 0.35% |
| 423 | 675730 | CSM | 0.34% |
| 424 | 675735 | SOM | 0.26% |
| 425 | 675747 | CSM | 0.06% |
| 426 | 675775 | CSM | 0.09% |
| 427 | 675779 | CSM | 0.31% |
| 428 | 675820 | SOM | 0.01% |
| 429 | 675823 | SOM | 0.13% |
| 430 | 675846 | CSM | 0.12% |

**Furman v. At Home Stores**
**Attachment 1**

| | Employee Number | Job Position | Pro Rata Factor |
|---|---|---|---|
| 431 | 675854 | CSM | 0.01% |
| 432 | 675858 | SOM | 0.21% |
| 433 | 675859 | SOM | 0.33% |
| 434 | 675900 | CSM | 0.05% |
| 435 | 675934 | CSM | 0.04% |
| 436 | 676071 | SOM | 0.03% |
| 437 | 676132 | CSM | 0.02% |
| 438 | 676147 | CSM | 0.03% |
| 439 | 676307 | CSM | 0.03% |
| 440 | 676315 | CSM | 0.01% |

# ATTACHMENT 2

[______, 2017]

[Settlement Class Member Name]
[Settlement Class Member Address]
[Settlement Class Member Address]

**Re:** **<u>Notice of Settlement of Collective Action</u>** <u>(*Furman v. At Home Stores LLC, f/k/a Garden Ridge Management, LLC* Case No. 16-cv-08190)</u>

Dear [Settlement Class Member]:

This letter is about the settlement of a lawsuit against At Home Stores LLC (the "Company"). The settlement was approved by a federal court in Illinois. You may participate in the settlement because you worked for the Company as a Customer Support Manager ("CSM") and/or a Store Operations Manager ("SOM") between January 5, 2014 and January 14, 2017 (the "Class Period").

This letter explains the lawsuit, the settlement, and how to participate in the settlement.

**1. What is this Lawsuit About?**

Brian Furman worked as a CSM at an At Home store located in Aurora, Illinois. Mr. Furman filed this lawsuit alleging that the Company misclassified him as an exempt managerial employee and failed to pay him and other CSMs working for the Company overtime wages for the time they spent working more than forty (40) hours per week in violation of the Fair Labor Standards Act ("FLSA"). Donald Johnson joined the lawsuit as a Plaintiff. He worked as a CSM at an At Home store located in Indianapolis, Indiana and as a SOM at an At Home store located in Snellville, Georgia. Mr. Johnson alleges that the Company also misclassified him as an exempt managerial employee and failed to pay him and other CSMs and SOMs overtime wages in violation of the FLSA.

The Company denies that it violated the FLSA by classifying CSMs and SOMs as exempt from overtime pay. The Company asserts that it complied with any and all applicable laws, including the FLSA. To avoid further dispute, protracted litigation and related costs, however, the Company has agreed to settle the lawsuit.

The Court presiding over this case has not made any rulings on the merits of the claims or defenses in this action, and no Party has prevailed. Rather, the parties came to a mutually agreeable resolution which the Court has approved.

**2. How Was My Settlement Payment Calculated and What Does it Represent?**

Your settlement payment was calculated based on the number of weeks that you worked for the Company as a CSM and/or a SOM and your regular rate of pay during the Class Period. The Company produced schedule and pay data for everyone who worked as a CSM or a SOM during the Class Period. Class Counsel reviewed that data and identified the number of days you worked in each week of the Class Period. For settlement purposes, the Parties have assumed that you worked nine hours per day on each day that you worked (10 hours of scheduled time minus a one-

hour lunch). The overtime wages you are provided as part of this settlement was calculated based on the difference between the total hours over forty (40) that you worked per week multiplied by 1/2 times your regular rate of pay.

The Company has agreed to pay a total of $990,000.00 to settle the lawsuit, which equals the Settlement Fund. Of that amount, the Company is paying Plaintiffs' Attorneys Fees in the amount of $330,000; Litigation Expenses in the amount of $716.08; Settlement Administration Costs in the amount of $10,000; a Service Payment in the amount of $10,000 to Named Plaintiff Furman; and a Service Payment in the amount of $5,000 to Opt-In Plaintiff Johnson. The remainder, which is referred to as the "Net Settlement Fund," is being paid to current and former CSMs and SOMs who worked during the Class Period. Your award was calculated by taking the overtime wages that were calculated under the Settlement based on the number of days and weeks that you worked for the Company during the Class Period and dividing that number by the total amount calculated to be owed to all CSMs and SOMs. The result is your ratable share of the Net Settlement Fund. Your ratable share of the Net Settlement Fund equals approximately 71.5% of the overtime wages Plaintiffs compute you are owed during the Class Period. Defendant, however, disputes that any overtime wages are owed in this matter. The enclosed Settlement Payment is your ratable share of the Net Settlement Fund.

**If you have questions about your settlement amount, contact Class Counsel or the Settlement Administrator, identified below in paragraphs 7 and 8**.

### 3. How Do I Participate In The Settlement?

To participate in the settlement, you should deposit or cash your Settlement Payment on or before ______, 2017.

### 4. Will I Owe Taxes On A Settlement Payment If I Participate?

Your individual Settlement Payment was separated into two equal amounts: 50% was allocated to the claims asserted in the lawsuit for unpaid overtime wages, and 50% was allocated to the claims asserted in the lawsuit for liquidated damages. The portion allocated to claims asserted in this lawsuit for unpaid overtime wages is subject to all authorized or required payroll tax deductions, just as if it were a regular paycheck, and it will be reported on an I.R.S. Form W-2. The portion allocated to liquidated damages will be reported as non-wage income on an I.R.S. Form 1099. The Company will pay the employer's share of applicable state and federal payroll taxes. Neither Class Counsel nor the Company make any representations to you concerning the tax implications of the settlement payment. **Please consult with your accountant or other tax advisor regarding the tax consequences of the settlement amount paid to you.**

### 5. What Are My Options?

#### (a) Participate In the Settlement By Negotiating your Settlement Check

If you deposit or cash your settlement payment by ______, 2017, you will join the settlement as an Opt-in Plaintiff and agree to release all claims or causes of action during the Class Period for unpaid overtime wages that were asserted in the lawsuit, or that arise out of facts asserted in the

lawsuit, including claims under the FLSA, federal, state and local law, or common law, as well as any related claims for liquidated damages, penalties, attorneys' fees and costs, expenses and interest. Negotiating your settlement check is the only way you receive funds under the settlement agreement in this case.

### (b) Do Not Participate In the Settlement and Preserve Your Rights Against the Company

If you do not deposit or cash your settlement payment by ______, 2017, the check will become void and you will not participate in the settlement. You will not receive any money from this settlement and you will not release any claims you may have against the Company. You should be aware that FLSA claims are limited to a two or three-year statute of limitations.

## 6. Does The Law Protect Me From Retaliation If I Participate?

Yes. It is illegal for the Company to retaliate or discriminate against you based on your decision to participate or not participate in the Settlement. The Company will not discriminate or retaliate against you in any way because of your decision to participate or not participate in this settlement.

## 7. What Happens If My Address Changes Before I Receive my I.R.S. Tax Forms?

If your address changes before you receive your I.R.S. Tax Forms, it is your responsibility to inform the Settlement Administrator or Class Counsel of your new address. The Settlement Administrator can be reached at:

Insert Contact Information
Address Line 2
Address Line 2
Phone

## 8. Are There More Details Available?

Yes. This notice summarizes the basic terms of the settlement. If you have questions about your Settlement Payment, contact Class Counsel:

**Maureen A. Salas – msalas@flsalaw.com**
**Sarah J. Arendt – sarendt@flsalaw.com**
**Werman Salas P.C.**
**77 W. Washington, Suite 1402, Chicago, IL 60602**
**Phone: (312) 419-1008 Fax: (312) 419-1025**

You may also contact the Settlement Administrator, who is identified in paragraph 7 of this letter. **Do not contact the Court, the Court Clerk, the Company, or Company's attorneys.**

Any questions regarding the tax implications of the Settlement Payments should be directed to your tax professional. Any questions about the Settlement should be directed to Class Counsel or the Settlement Administrator.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BRIAN FURMAN, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br>**v.**<br><br>**AT HOME STORES LLC, f/k/a GARDEN RIDGE MANAGEMENT, LLC**<br><br>**Defendant.** | **Case No. 1:16-cv-08190**<br><br>**Magistrate Judge Mary Rowland** |

**[PROPOSED] ORDER APPROVING SETTLEMENT,**
**SERVICE AWARD, AND ATTORNEYS' FEES AND COSTS**

The above-entitled matter came before the Court on Plaintiff's Unopposed Motion to Certify a Collective Action Under Section 216(b) of the FLSA Solely for Settlement Purposes, for Approval of Settlement, for Appointment of Settlement Administrator, and For Approval of Awards of Attorneys' Fees and Costs and Service Award ("Motion for Settlement Approval"). After reviewing the Motion for Settlement Approval, the supporting Memorandum of Law in Support of the Motion for Settlement Approval (the "Memorandum"), the Declaration of Maureen A. Salas ("Salas Decl.") and the supporting exhibits, the Court hereby finds as follows:

**The Settlement Is Approved**

1. The Court approves and incorporates by reference all of the definitions contained in the Joint Stipulation of Settlement.

2. The Court certifies, for purposes of the Parties' Settlement, the following Settlement Class, for collective treatment pursuant to 29 U.S.C. §216(b): individuals who worked for Defendant as Customer Support Managers (CSMs) and/or Store Operations Managers (SOMs)

between January 5, 2014 and January 14, 2017.

3. The Court hereby approves the Nine Hundred Ninety Thousand and No/100ths Dollar ($990,000.00) collective action settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Murphy v. Diversified Restaurant Holdings, Inc.,* No. 14-cv-3653, ECF No. 124, Order Approving Settlement and Dismissing Action, ¶ 1 (N.D. Ill. Oct. 1, 2015); *see also Butler v. Am. Cable & Telephone, LLC,* No. 09 Civ. 5336, 2011 WL 4729789, at *8-9 (N.D. Ill. Oct. 6, 2011). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *2 (N.D. Ind. Sept. 25, 2014). "It is a well settled principle that the law generally encourages settlements." *Dawson v. Pastrick,* 600 F.2d 70, 75 (7th Cir. 1979).

4. Here, the settlement meets the standard for approval. The settlement was the result of contested litigation. Defendant denied that it violated the FLSA by classifying CSMs and SOMs as exempt from overtime pay, and the settlement was the result of arm's-length negotiations conducted by Magistrate Judge Rowland. Recognizing the uncertain legal and factual issues involved, the parties reached their settlement after Defendant produced and the Parties' reviewed comprehensive schedule and payroll data for CSMs and SOMs. At all times during the settlement negotiation process, negotiations were conducted at arm's length.

**The Settlement Procedure Is Approved**

5. A one-step settlement approval process is appropriate. *See, e.g.*, *Briggs v. PNC Financial Services Group, Inc.,* No. 15-cv-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) citing *Koszyk v. Country Fin. a/k/a CC Servs., Inc.,* No. 16 Civ. 3571, 2016 WL 5109196,

at *1 (N.D. Ill. Sept. 16, 2016) ("'A one-step settlement approval process is appropriate[]'" in FLSA settlements.); *Castillo v. Noodles & Co.*, No. 16-cv-030306, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016) (granting request for one-step approval process); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (same). Collective actions under 29 U.S.C. § 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions).

6. The Settlement Notice attached to the Joint Stipulation of Settlement as Attachment 2 is approved. The Settlement Administrator shall make any necessary corrections to the dates in the Settlement Notice. The direct issuance of settlement checks informs Settlement Class Members of the specific amounts of their individual Settlement Payments. The Settlement Notice sufficiently informs Settlement Class Members of the other key terms of the settlement, including how Class Members may participate (or not participate), how the Settlement Fund is being allocated, what the Settlement Payment represents, the scope of the release, and the request for attorneys' fees and costs. *See Koszyk*, 2016 WL 5109196, at *2 (N.D. Ill. Sept. 16, 2016) (approving class notice that, *inter alia*, described settlement terms and fee allocation); *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (same);

*Tobin v. Beer Capitol Distributing Inc.*, No. 12 Civ. 274, 2012 WL 5197976, at *3 (E.D. Wis. Oct. 19, 2012) (same).

7. The plan for sending the Settlement Payments as described in the Joint Stipulation of Settlement is approved.

**<u>The Service Awards Are Approved</u>**

8. A service award of Ten Thousand and No/100ths Dollars ($10,000.00) to Named Plaintiff Brian Furman and a service award of Five Thousand and No/100ths Dollars ($5,000.00) to Opt-in Plaintiff Donald Johnson is approved. The amount shall be paid from the Settlement Fund. Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This is especially true in employment litigation. Service awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers. *Beesley v. Int'l Paper Co.*, No. 06 C 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014).

9. Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *See, e.g.*, *Espenscheid*, 688 F.3d at 876-77 (Posner, J.); *Cook*, 142 F.3d at 1016; *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012); *cf. Follansbee v. Discover Fin. Servs., Inc.*, No. 99 Civ. 3827, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) (recognizing the importance of incentive awards). Accordingly, incentive awards

are commonly awarded to those who serve the interests of the class. *Massiah*, 2012 WL 5874655, at *8 (collecting cases); *accord Chesemore v. Alliance Holdings, Inc.*, No. 09 Civ. 413, 2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011).

10. In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012). An examination of these factors warrants the approval of the requested service awards.

11. First, the Named Plaintiff Furman and Opt-in Plaintiff Johnson took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to over 400 Settlement Class Members, who will receive checks in amounts ranging from a minimum of $30.00 to a maximum of over $5,472. Courts in this Circuit and others have approved incentive awards for similar activities. See *Briggs,* 2016 WL 7018566, at * 3 (approving $12,500 service award to two plaintiffs in FLSA settlement for a total of $25,000 in service awards); *Castillo v. Noodles & Company,* No. 16-cv-03036, 2016 WL 7451623 (N.D. Ill. Dec. 23, 2016) (approving $10,000 service award to four plaintiffs in FLSA settlement for a total of $40,00 in service awards). Furman's and Johnson's actions have resulted in substantial benefit to the class.

12. Second, Furman and Johnson undertook substantial direct and indirect risk. In agreeing to file this class action suit in his name, Plaintiff Furman undertook the significant risk that, "should the suit fail, [he could] find [himself] liable for the defendant's costs or even, if the

suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid*, 688 F.3d at 876-77 (internal citations omitted). Although Plaintiff Furman was no longer employed by Defendant when he filed the Complaint, he risked retaliation from future employers for the benefit of all Settlement Class Members. *See Beesley*, 2014 WL 375432, at *4 (recognizing that suits against former employers carry risks of professional and personal repercussions). In addition, Opt-in Plaintiff Johnson faced risks for joining a lawsuit filed against his current employer. ("litigation against an employee's current or former employer carries unique risks and fortitude, including alienation from employers or peers."). "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks." *Espenscheid,* 688 F.3d at 877; *accord Koszyk*, 2016 WL 5109196, at *3.

13. Third, Furman and Johnson spent a significant amount of time and effort pursuing this litigation on behalf of the Settlement Class Members. Furman and Johnson provided factual information and otherwise assisted Plaintiff's Counsel with the prosecution of the litigation, and Furman traveled to Chicago to attend the settlement conference. *Briggs,* 2016 WL 7018566, at * 3 (approving service award to named plaintiffs who expended time and effort providing pre-litigation assistance to plaintiff's counsel, preparing and reviewing the complaint, providing a declaration, and helping prepare for mediation); *Castillo,* 2016 WL 7451626, at * 3 (approving service award to named plaintiffs who participated in an extensive pre-suit investigation, provided documents crucial to establishing the claims, and assisting plaintiffs' counsel in analyzing documents during the informal discovery process).

14. Accordingly, a service award of $10,000.00 to Named Plaintiff Brian Furman and a service award of $5,000.00 to Opt-in Plaintiff Donald Johnson for their service to the class members of this collective action are approved.

**<u>Fees and Costs of the Settlement Administrator and Attorneys Are Approved</u>**

15. The Court approves of the Settlement Administrator's fees and costs of $10,000 to Rust Consulting.

16. The Court grants Plaintiff's Counsel's request for one-third of the settlement, Three Hundred Thirty Thousand and No/100ths Dollars ($330,000.00), as attorneys' fees.

17. In awarding attorneys' fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid*, 264 F.3d at 718. District courts must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases . . . . " *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

18. Plaintiff's request for one-third of the settlement in attorneys' fees is consistent with the market in the Northern District of Illinois. *Taubenfeld*, 415 F.3d at 600 (approving attorneys' fees based, *inter alia*, on "legal hurdles that lead counsel faced in proving liability") (citing *Donovan v. Estate of Frank E. Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985)). Plaintiff's Counsel are experienced wage and hour class and collective action litigators and have achieved a positive result on behalf of the Settlement Class Members.

19. Before initiating this litigation Plaintiff's Counsel agreed with the Named Plaintiff to request no more than one-third of any (at that time uncertain) future recovery. Thus, the Court knows what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)," *In re Synthroid*,

264 F.3d at 718, 720, because the Named Plaintiff contracted for Plaintiff's Counsel to be compensated with the amount Plaintiff's Counsel now seek, *see In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015) (stating "presumption of market-rate reasonableness" would have attached if parties had "established[ed] a fee structure at the outset of [the] lawsuit").

20. It was reasonable for the Named Plaintiff to contract for one-third of the settlement fund to be paid to Plaintiff's Counsel. In the Northern District of Illinois, class and collective action employment lawyers routinely contract to receive one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery. In addition, one-third is the standard contingent percentage that employment lawyers in the Northern District of Illinois charge individual clients. These multiple data points, confirming that plaintiffs routinely agree to a one-third contingency fee arrangement, reinforces that Plaintiff's Counsel are requesting the proper market rate. *See In re Synthroid*, 325 F.3d at 976.

21. Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements. *See, e.g.*, *Briggs*, 2016 WL 7018566, at *3 (granting request for one-third of the settlement fund for attorneys' fees in FLSA collective action in the amount of $2,000,000 as attorneys' fees); *Castillo,* 2016 WL 7451626, at *4 (granting request for one-third of the settlement fund for attorneys' fees in FLSA collective action in the amount of $1,000,000 as attorneys' fees); *Koszyk*, 2016 WL 510916, at *3 (granting request for one-third of the settlement fund for attorneys' fees plus costs); *Watson,* No. 15 Civ. 11881 (N.D. Ill. July 11, 2016) (St. Eve, J.), ECF No. 34, 39 (same); *Taubenfeld*, 415 F.3d at 599-600 (noting class actions in the Northern District of Illinois have awarded fees

of 30-39% of the settlement fund); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 842 (awarding fees on one-third common fund); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) (same and noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"); Alba Conte *et al.*, *Newberg on Class Actions* § 14.6 (4th ed. 2002) ("[F]ee awards in class actions average around one-third of the recovery[.]").

22. Plaintiff's Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Plaintiff's Counsel faced. At the outset of the litigation, Plaintiff's Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent the Named Plaintiff. *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees). Plaintiff's Counsel took this case on a contingent basis, meaning that there was a strong risk that they would not be paid. *See Sutton*, 504 F.3d at 693-94 ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Plaintiff's Counsel also faced significant legal hurdles in establishing certification and proving liability. As the Seventh Circuit has noted, Plaintiff's Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).

23. Plaintiff's Counsel's request for reimbursement of Seven Hundred Sixteen Dollars and Eight Cents ($716.08) in actual out-of-pocket expenses incurred in prosecuting this case, including costs for filing and service fees, and postage is granted. The Court finds these costs to

be reasonably incurred.

**Dismissal and Post-Judgment Procedure**

24. This case is dismissed without prejudice, with leave to reinstate within 30 days after the Check Cashing Deadline. In the event a motion to reinstate is not filed within 30 days after the Check Cashing Deadline, the case shall be deemed, without further order of the Court, to be dismissed with prejudice.

25. The Court will retain jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement, including for overseeing the distribution of settlement funds.

26. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this ___ day of _____, 2017

____________________________________
Honorable Mary Rowland
United States Magistrate Judge

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **BRIAN FURMAN, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br>**v.**<br><br>**AT HOME STORES LLC, f/k/a GARDEN RIDGE MANAGEMENT, LLC**<br><br>**Defendant.** | **Case No. 1:16-cv-08190**<br><br>**Magistrate Judge Mary Rowland** |

**DECLARATION OF MAUREEN A. SALAS**

I, Maureen A. Salas, declare and state under penalty of perjury, the following:

1. I am a member in good standing of the Illinois State Bar and am a shareholder of Werman Salas P.C.

2. I submit this declaration in support of Plaintiff's Unopposed Motion to Certify a Collective Action Under Section 216(b) of the FLSA Solely for Settlement Purposes, for Approval of an Opt-In Settlement, for Appointment of Settlement Administrator, and for Approval of Awards of Attorneys' Fees and Costs and Service Awards

3. I graduated from DePaul University College of Law in May 2006 *summa cum laude* (top 5%) and was elected into the Order of the Coif. I was admitted to practice law in the State of Illinois in 2006. During the entire course of my legal practice, I have practiced primarily in the area of labor and employment law. My practice has been highly concentrated in representing employees in cases arising under federal and state wage and hour laws, including the Fair Labor Standards Act ("FLSA"), Illinois Minimum Wage Law ("IMWL"), and the Illinois Wage Payment and Collection Act ("IWPCA").

4. Over 95% of my legal work involves federal and state court litigation of wage and hour cases in which employees seek to collect unpaid compensation or other owed employment benefits.

5. Since I became admitted in 2006, I have practiced primarily in representing employees in cases arising under federal and state wage and hour laws, including the FLSA and the IMWL. I have been counsel in over three hundred and eighty (380) cases filed in the Northern, Southern and Central Districts of Illinois and the State of Illinois, Circuit Court of Cook County, involving the non-payment of overtime pay, minimum wages, and other owed compensation. The majority of these cases proceeded as collective actions under § 216(b) of the FLSA and/or set forth class action claims under the IMWL and/or IWPCA.

6. On January 1, 2013, I became a shareholder in the law firm Werman Salas P.C.

7. I have been a speaker on wage and hour matters. In October 2011, I was a speaker at the National Employment Lawyers Association's meeting on "Representing Workers in Individual & Collective Actions Under the FLSA." In August 2012, I was a speaker at the American Bar Association's - Section of Labor and Employment Law's - Annual Meeting. In October 2012 and October 2013, I was a speaker for continuing legal education "Wage & Hour Law" programs hosted by Bridgeport Legal Conferences. On March 9, 2013, I was a speaker at the National Employment Lawyers Association meeting on "Preventing Wage Theft: A Two-Day Guide to Litigation Cases Involving Wages, Hours and Work." On March 23, 2016, I was a speaker for an Illinois State Bar Association continuing legal education program "Tips for Negotiating Parental Leave for Attorneys." On April 28, 2016, I was a speaker for a Chicago Bar Association continuing legal education program "Hot Topics in Wage & Hour Law."

8. I am a Contributing Editor to Chapter 19, "Collective Actions," of the leading treatise on the Fair Labor Standards Act, entitled, "Kearns, *The Fair Labor Standards Act*."

9. I have been designated as class counsel in a number of wage and hour class actions certified under Fed. R. Civ. P. 23 or under Section 2-801 of the Illinois Code of Civil Procedure, including:

a. *Zamudio v. Nick & Howard LLC d/b/a The Underground, et al.,* Case No. 15-cv-3917, in the Northern District of Illinois. This case was certified under the Illinois Minimum Wage Law and under the Illinois Wage Payment Collection Act for unpaid minimum and other earned wages for settlement purposes.

b. *McDonnell v. Groupon,* Case No. 14 CV 9028, in the Northern District of Illinois. This case was certified under the Illinois Minimum Wage Law for overtime wages for settlement purposes.

c. *Rusin v. Chicago Tribune Company,* Case No. 12 C 01135, in the Northern District of Illinois. This case was certified under the Illinois Minimum Wage Law for overtime wages for settlement purposes.

d. *Snoep v. Asia on Illinois LLC*, Case No. 12 C 2387, in the Northern District of Illinois. This case was certified under the Illinois Minimum Wage Law for unpaid minimum wages for settlement purposes.

e. *Peraza, et al. v. Dominick's Finer Foods, LLC.,* Case No. 11 C 8390, in the Northern District of Illinois. This case was certified under the Illinois Minimum Wage Law for overtime wages for settlement purposes.

f. *Hopkins v. Theofanous Brothers, Inc.,* Case No. 10 CH 672, in the Circuit Court of McHenry County, Chancery Division. This case was certified under the Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act for unpaid minimum and other wages.

g. *O'Donnell v. AT&T Services, Inc.,* Case No. 10 CH 46886, in the Circuit Court of Cook Country, Chancery Division. This case was certified under the Illinois Minimum Wage Law for overtime wages for settlement purposes.

h. *Gonzalez v. Fellowes, Inc.,* Case No. 10 CV 7682, in the Northern District of Illinois. This case was certified as a class action under the Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act for settlement purposes.

i. *Flores v. EVA Investments,* Case No. 10 CH 12293, in the Circuit Court of Cook

County, Chancery Division. This case was certified under the Illinois Minimum Wage Law for overtime wages for settlement purposes.

j. *Barragan v. Evanger's Dog and Cat Food Co., Inc.,* Case No. 09 CV 227, in the Northern District of Illinois. This case was certified under the Illinois Minimum Wage Law for owed overtime wages.

k. *Villareal v. El Chile Inc.*, Case No. 07 C 1656, pending in the United States District Court for the Northern District of Illinois. This case was certified under the Illinois Minimum Wage law for owed overtime wages.

l. *Jimenez v. Yamuna Enterprises, Inc.*, Case No. 07 CH 20918, in the Circuit Court of Cook County, Chancery Division. This case was certified under the Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act for owed overtime, minimum wages, and other unpaid compensation.

m. *Shaukat, et al. v. Wireless 4 U*, Case No. 06 C 4214, filed in the United States District Court for the Northern District of Illinois. This case was certified under Illinois, Arizona, and Missouri state law and involves the non-payment of commission wages.

**The Litigation**

10. The Action was filed on August 18, 2016, in the U.S. District Court for the Northern District of Illinois, Eastern Division, by the Named Plaintiff Brian Furman. Prior to the filing of the Action, Plaintiff's Counsel conducted a thorough investigation into the merits of Furman's allegations. Plaintiff's Counsel obtained and reviewed documents from Plaintiff Furman, including pay records, corporate documents, and documents relating to Furman's job duties. Plaintiff's Counsel also conducted an in-depth interview of Brian Furman.

11. Defendant answered the Complaint, and denied that Plaintiff was misclassified as exempt. During the Parties' Rule 26(f) conference, the Parties discussed the potential for settlement and agreed to ask for a referral to the magistrate judge for a settlement conference. On November 1, 2016, this matter was referred to the calendar of the Court for the purpose of holding a settlement conference.

12. The Parties then engaged in a significant informal exchange of information necessary to prepare for the settlement conference. Defendant voluntarily produced job descriptions, store schedules, and payroll records for Plaintiff Furman, Plaintiff Johnson, and all other CSMs and SOMs who worked for Defendant during the Class Period. Plaintiff Furman voluntarily produced his resume, communications regarding his job duties, and the corporate documents he had in his possession. The Parties participated in several telephonic conferences to discuss the scope of each other's document production and to confer on the electronic data Defendant produced. Plaintiff calculated damages based on the electronic schedule and pay data that Defendant produced. The Parties then drafted settlement conference letters setting forth their respective positions as to liability and damages, and exchanged their letter so that each side could evaluate the strengths of the other's claims. On March 7, 2017, the Parties attended a full-day settlement conference with the Court. With the assistance of the Court, the parties were able to reach a settlement.

13. Named Plaintiff Brian Furman worked as a CSM at Defendant's store in Aurora, Illinois from May 2014 to April 2016. Opt-in Plaintiff Donald Johnson worked as a CSM at Defendant's store in Indianapolis, Indiana from October 2014 to December 2015, and Mr. Johnson worked as a SOM at Defendant's store in Snellville, Georgia from approximately December 2015 to the present. Named Plaintiff Furman and Opt-in Plaintiff Johnson allege that the Company violated the FLSA by improperly classifying them, and other CSMs and SOMs, as exempt from federal and state overtime requirements and failing to pay them overtime wages. Plaintiff's FLSA claim was filed as a collective action.

14. Prior to the Settlement, the parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at

issue in this case. In the context of the parties' settlement efforts, Defendant provided schedule and payroll data to Plaintiff's Counsel for all Settlement Class Members. Only after continued negotiations over a four-month period were the parties able to resolve this dispute.

**Settlement Administration**

15. Settlement Class Members are current and former employees of Defendant who worked as Customer Support Managers (CSMs) and Store Operations Managers (SOMs).

16. The Settlement Payments range from a minimum payment of $30 to over $5,472, and the average Settlement Payment approximates $1,441.55.

17. The benefit the Settlement provides Class Members is excellent. The entire Gross Settlement Fund will be distributed to Settlement Class Members, Plaintiff's Counsel and to the Settlement Administrator. In addition, the Settlement is a non-claims made settlement. All Settlement Class Members will receive a check via U.S. Mail, with no pre-conditions, representing their *pro rata* share of the Settlement Fund based on the estimated number of hours that they worked for Defendant during the Class Period. Settlement Class Members who do not negotiate their settlement checks will not release any of their overtime wage claims.

18. In addition, the Settlement Payments Class Members will receive are significant. The Gross Settlement Fund represents the recovery of approximately 112% of the overtime wages Plaintiff computes Settlement Class Members are owed during the Class Period. Each Settlement Class member will receive an award from the Net Settlement Fund that compensates him or her for approximately 72% of the amount Plaintiff claims are owed in overtime wages. Settlement Class Members who cash settlement checks will receive a minimum of $30 and up to over $5,400. This is an exceptional result by any measure inasmuch as Defendant disputes that its policies and practices violated the FLSA.

**The Named Plaintiff, Brian Furman, and Opt-In Plaintiff, Donald Johnson, Were Critical to the Resolution of the Claims and Are Entitled to Service Payments**

19. Plaintiff seeks a Service Award in the amount of $10,000 for Named Plaintiff Brian Furman. The service award is sought in recognition of Furman's efforts to pursue the claims raised in this Action as the sole Named Plaintiff on behalf of the class. Plaintiff Furman provided factual information and otherwise assisted Plaintiff's Counsel with the prosecution of the litigation and traveled to Chicago to attend the settlement conference. Plaintiff Furman agreed to be deposed eventually, and agreed to testify if there was a trial. In light of his substantial efforts resulting in a $990,000 settlement on behalf of himself and over 339 similarly-situated persons, Plaintiff's Attorneys believe that Plaintiff Furman is entitled to a $10,000 service payment.

20. Plaintiff also seeks a Service Award in the amount of $5,000 to be paid to Opt-In Plaintiff Donald Johnson for his time and effort spent conferring with Plaintiff's Attorneys, and providing information that assisted Named Plaintiff Furman in reaching this settlement on behalf of Settlement Class Members. Plaintiff Johnson added significant value to the case because he worked as both a CSM and SOM, and he worked for two different stores in two different states. In light of Johnson's participation in this litigation, a settlement was reached on behalf of 238 CSMs plus an additional 202 individuals who also worked as SOMs. Johnson's efforts are deserving of a service award in the amount of $5,000.

21. The requested Service Awards in the total amount of $15,000 represents 1.5% of the Settlement Fund, which is a reasonable percentage.

**Plaintiff's Attorneys Support the Settlement**

22. Plaintiff's Counsel has gained a comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement.

23. Based on Plaintiff's Counsel's knowledge of the case and the applicable law, as well as their experience in numerous similar wage and hour collective actions, Plaintiff's Counsel believe the Settlement is fair and reasonable.

**Plaintiff's Attorneys' Fees**

24. Plaintiff's Counsel executed a fee arrangement with the Named Plaintiff that entitled Plaintiff's Counsel to one-third of any recovery.

25. Plaintiff's Counsel took this case on a contingent fee basis and assumed the risk that they would receive *no* fee for their services.

**Litigation Expenses and Costs**

26. Plaintiff's Counsel also seeks to recover $716.08 in Plaintiff's Litigation Expenses incurred *through* April 20, 2017. Plaintiff's Attorneys seek reimbursement for filing and service fees, postage, and research fees.

27. The cost of Settlement Administration is $10,000, which covers all settlement administration services performed to date and settlement administration activities remaining, including distribution of payments and penalty reporting.

I declare under penalty of perjury pursuant to 28 U.S.C. 1746 that the foregoing is true and correct.

Dated: April 26, 2017

s/Maureen A. Salas
Maureen A. Salas